UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEVEN SHERMAN

        Plaintiff,

vs.                                       CASE NO: 2:09-cv-319-JES-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

# REPORT AND RECOMMENDATION[1]

This matter comes before the Court on the Plaintiff, Steven Sherman's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on July 16, 2008, in the Middle District of Florida, Ocala Division. The Plaintiff filed his Memorandum of Law in Support of the Complaint (Doc. #14) on February 23, 2009. The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #15) on April 24, 2009. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

**FACTS**

*Procedural History*

On October 26, 2005, the Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Tr. 13). The Plaintiff also protectively filed a title XVI application for supplemental security income on the same date. (Tr. 13). In both applications, the Plaintiff alleges disability beginning February 17, 2005. (Tr. 13). The claims were denied initially on March 21, 2006, and upon reconsideration on August 2, 2006. (Tr. 13). The Plaintiff filed a timely Request for Hearing on August 10, 2006. (Tr. 13, 46). On January 3, 2008, a hearing was held before the Honorable Douglas A. Walker, Administrative Law Judge, in Ocala, Florida. (Tr. 13). An unfavorable decision was issued on February 26, 2008. (Tr. 13-22). The Plaintiff filed a timely request for review by the Appeals Council. (Tr. 9). The Appeals Counsel denied the Plaintiff's request on May 16, 2008. (Tr. 6-8). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

*Plaintiff's History*

The Plaintiff was born on December 3, 1970, making the Plaintiff 34 years of age at the time of the alleged onset of disability. (Tr. 21, 62). The Plaintiff has a limited high school education and is able to communicate in English. (Tr. 88, 339). The Plaintiff did not attend any special education classes. (Tr. 88). The Plaintiff has a past relevant work history as a lead material handler, customer service representative, and warehouse worker. (Tr. 21, 90). The Plaintiff alleges an onset disability date of February 17, 2005, due to back pain. (Pl. Brief, Doc. # 18, p. 4).

## Medical and Psychological History

On or about March 19, 2004, the Plaintiff suffered a back injury while working as a lead material handler. (Tr. 339). The Plaintiff states he opened a back door of a truck and a 55 gallon drum fell out, striking him and knocking him to the ground. (Tr. 339).

As a result of the injury, on October 7, 2004, Dr. Joseph Jamaris performed a diskectomy at L4 and L5 on the Plaintiff due to recurrent lumbar radiculopathy. (Tr. 203). On February 2, 2005, the Plaintiff presented to Dr. Joseph Jamaris, indicating that he had been experiencing severe pain in his low back. (Tr. 258). During the physical examination, Dr. Jamaris noted that although the Plaintiff admitted to continued excellent relief of severe pre-operative left leg pain with the recurrent left L4 & L5 diskectomies, the Plaintiff also reported progressive low back discomfort. (Tr. 258). The Plaintiff has extreme spasms and difficulty with any changes in mechanical position, and straight leg raising produced "extreme pain" in the lumbar region. (Tr. 258). Rotation of the hips was unremarkable. (Tr. 258). The Plaintiff was directed to use much heat, Flexoril, and to enroll in physical therapy. (Tr. 258).

On February 28, 2005, the Plaintiff underwent an independent medical evaluation performed by Dr. William Launder. (Tr. 218-219). Dr. Launder noted that Plaintiff had a two level laminectomy performed by Dr. Jamaris on October 7, 2004, and was now out of work due to continuing spasms in his back. (Tr. 218). Dr. Launder also noted the Plaintiff was tender on both of his sides, and that he had some paralumbar spasms. (Tr. 219). Additionally, the Plaintiff exhibited generalized weakness in his hip flexors, ankle dorsiflexors, and knee extensors. (Tr. 219). Flexion at the waist is 80 degrees, backward extension zero degrees, and side-to-side tilt is 10 degrees. (Tr. 219). Dr. Launder stated that diagnostic testing fails to reveal any significant osseous pathology.

(Tr. 219). The hip joints are both spherical in their contour and congruent. (Tr. 219). The sacroiliac joints on both sides are open and demonstrate no significant subchondral sclerosis. (Tr. 219). Dr. Launder concluded that Plaintiff suffered from chronic lumbar radiculopathy, and had a total back impairment of 56%. (Tr. 219).

On March 28, 2006, the Plaintiff presented at the office of Dr. Joseph Carrasco complaining of chronic intermittent back pain radiating to both legs, left greater than right. (Tr. 280). The Plaintiff indicated he experienced increased pain after "sitting for more than 15-20 minutes, standing more than 10 minutes, lifting anything greater than 15 pounds." (Tr. 280). The Plaintiff also reported that he was unable to do household chores. (Tr. 280). Dr. Carrasco also indicated that the Plaintiff was suffering from lumbar radiculopathy and post laminectomy syndrome. (Tr. 280). Dr. Carrasco also ordered a MRI to be performed and referred the Plaintiff for a nerve conduction study. (Tr. 280).

On March 22, 2006, the Plaintiff attended a consultative examination performed by Dr. Bernadette Santos. (Tr. 264-269). Upon physical examination, the Plaintiff had normal heel to toe pattern, normal base of support, and could stand on each leg for at least ten seconds. (Tr. 265). There were paravertebral spasms in the lumbar spine when he bent forward and sideways. (Tr. 265). The Plaintiff had decreased reflex on the left L-4 indicative of L-4 radiculopathy. (Tr. 266). Therefore, Dr. Santos concluded that Plaintiff should be able to "sit and walk unrestricted" and that it "should be safe for him to lift up to twenty pounds frequently and occasionally." (Tr. 266). There were no visual, communicative or environmental limitations. (Tr. 266).

On April 3, 2006, the Plaintiff underwent an MRI scan of the lumbar spine with and without contrast. (Tr. 282). The MRI revealed mild to moderate disc degeneration at L4-5 and L5-S1 with disc desiccation, disc space narrowing and mild circumferential disc bulge; mild bilateral inferior

neural foraminal narrowing; mild canal stenosis; post surgical changes involving left-sided posterior elements at L4-5 and L5-S1; and left-sided peridural and perineural enhancing fibrosis. (Tr. 283).

On July 5, 2006, the Plaintiff was also evaluated by Dr. Gary Honickman, a clinical psychologist at the request of the Social Security Administration. (Tr. 292-293). During this examination, the psychologist indicated the Plaintiff's thought processes were organized and situationally appropriate. Dr. Honickman noted the Plaintiff's mood and affect were felt to be "angry and depressed," and his insight and judgment were fair. (Tr. 292). Dr. Honickman concluded that the Plaintiff was suffering from Pain Disorder, DSM IV 307.89. (Tr. 293).

On August 30, 2007, the Plaintiff underwent another MRI of the lumbar spine. (Tr. 308-309). The results revealed similar findings as the previous test, but did show that his condition has progressed in severity. (Tr. 308-309). The Plaintiff had moderate degenerative disc disease at L4-5 and LS-S1 with moderate bilateral neural foraminal narrowing. (Tr. 309). Also, there was mild posterior broad based annular disc bulge noted at T11-12. (Tr. 309).

On September 21, 2007, Dr. Carrusco completed a medical source statement of ability to do work related activities form. (Tr. 310-212). Dr. Carrusco opined that Plaintiff could lift less than ten pounds; stand and walk less than one hour in an eight-hour workday; sit less than one hour in an eight hour workday; could only occasionally kneel; and was limited in his ability to push or pull in his lower extremities. (Tr. 310-311).

*Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010 and that the Plaintiff has not engaged in substantial gainful activity since February 17, 2005, the alleged onset date of disability

(20CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq*. (Tr. 15). The Plaintiff was found to have the following severe impairments: status post lumbar laminectomy x 2. (Tr. 15). However, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 16). After careful consideration of the record, the ALJ concluded the Plaintiff has the residual functional capacity to stand, walk, and sit six hours in an eight-hour workday. (Tr. 16). The Plaintiff can lift 20 pounds occasionally and 10 pounds frequently. (Tr. 16). The Plaintiff has occasionally postural limitations in climbing, balancing, stooping, kneeling and crouching. (Tr. 16). The ALJ further concluded the Plaintiff was unable to perform any past relevant work (20CFR 404.1565 and 416.925). (Tr. 21). The ALJ stated the Plaintiff was born December 3, 1970, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 21). The Plaintiff has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964). (Tr. 21). The ALJ determined that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled" whether or not the Plaintiff has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 21). Considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that the Plaintiff is capable of performing. (Tr. 21). As a result of these findings, the Plaintiff was found to have not been under a disability, as defined in the Social Security Act from February 17, 2005, through the date of this decision. (20 CFR 416.920(g) and 416.920(g). (Tr. 35).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citingRichardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2]. 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

The Plaintiff brings up two issues as to why this case should be remanded: (1) the ALJ erred by failing to utilize the testimony of a VE, and instead, relied on the mechanical application of the Medical-Vocational Guidelines when the record shows that Plaintiff suffered from non-exertional impairments; and (2) the ALJ erred by failing to properly assess the Plaintiff's credibility and by improperly evaluating the non-exertional impairment of pain where substantial evidence shows the Plaintiff suffered from pain caused by a severe and significant back impairment that could reasonably be expected to cause the alleged pain. The Court will proceed by examining the second issue regarding the Plaintiff's credibility and the pain analysis first.

### *1. Whether the ALJ Erred in the Credibility Analysis and Incorrectly Applied the Eleventh Circuit Pain Standard*

The Plaintiff argues the ALJ did not properly assess the Plaintiff's credibility and did not correctly apply the Eleventh Circuit Pain Standard. He argues, essentially, the ALJ misapplied the standard by requiring both objective medical evidence of the severity of the condition and objective medical evidence of the severity of the limitation.

The Plaintiff in the instant case asserts that he suffers from severe pain symptoms that were consistent with the medical evidence and the laboratory findings, and that the resulting pain caused by two back surgeries caused him to quit working. The Plaintiff further asserts he continually complained of pain to his treating physicians and at no time did his treating physicians indicate the pain was not credible or expected. (Doc.# 18, p. 9).

Pain is a non-exertional impairment. Phillips v. Barnhart, 357 F.3d 1232, 1243 n. 11 (11th

Cir. 2004). Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard." Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

The ALJ states:

> The claimant testified that he had two surgeries since his accident in October 2004. He had problems with his low back, hips, legs, knees and feet. Pain was his main problem. He takes Aleve for the pain. He had problems walking. The claimant can lift less than ten pounds and has severe pain in his back, ankles, and legs. He walks approximately 300 feet. The claimant has to alternate sitting and standing throughout the day. He can shop 10-15 minutes. His chores include doing simple stuff light drying glasses and putting them away. (Tr. 20).

After considering the evidence of record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 20). The Plaintiff claims that his pain precludes him from work activity. The ALJ discounts this, however, by stating that "all of his doctors who treated him prior to his surgery and postoperatively have concluded that he could perform well at the light exertional level." (Tr. 20). In fact, the ALJ points to the fact that the Plaintiff only takes Aleve for the pain. Furthermore, the ALJ states, "he was not treated by any physician since 2006 and only returned to Dr. Carrasco in September 2007 following his MRI to have a physical capacity form completed." (Tr. 20). The ALJ concludes, "his pain therefore, cannot be so severe that it is incapacitating if he is not receiving regular treatment and taking only Aleve. He is able to function at the light exertional level as described by his activities of daily living." (Tr. 20).

    The ALJ notes:

> although the medical records indicate that the Plaintiff reports chronic pain, it should be noted that "chronic pain" and "severe pain" are not synonymous. In medical terms, "chronic" merely means that the condition has lasted a long time (the work "chronic" being derived from the Greek word chronos, meaning time". The United States Center for Health Statistics defines a chronic condition as one of three months duration or longer (See <u>Stedman's Medical Dictionary</u> 339 (26th ed. 1995)).

The ALJ points this out because the Plaintiff was able to attend the hearing proceedings closely and fully without any noted distraction or overt pain behavior. The ALJ specifically observed the Plaintiff and specifically noted that he was not in any obvious pain or discomfort when walking into or out of the hearing room or while sitting during the course of the hearing. In addition, the ALJ

noted that the Plaintiff lacked the general physical appearance of a person who might be experiencing prolonged or severe pain. Therefore, the ALJ did not find the Plaintiff's allegations of an incapacitating pain or impairment fully credible. (Tr. 20).

While the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. *See* Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). *See* Norris v. Heckler, 760 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination).

The Court finds the ALJ properly assessed the Plaintiff's credibility and non-exertional impairment of pain. The ALJ reviewed the objective medical evidence from the treating and examining physicians, as well as other factors such as information for the Plaintiff, evidence of daily activities, the frequency and intensity of pain and precipitating and aggravating factors, medication taken and resulting side effects, measures taken to alleviate pain and inconsistencies in the Plaintiff's statements. There is substantial evidence in the record to support the ALJ's finding, and therefore, it should not be disturbed.

*2. Whether the ALJ's Exclusive Reliance on the Medical-Vocational Guidelines was Error*?

The Plaintiff argues the ALJ erred at Step 5 by utilizing the Medical-Vocational Guidelines instead of soliciting the testimony of a Vocational Expert. The Plaintiff also argues that his pain is

a non-exertional impairment that precludes sole use of the Medical-Vocational Guideline rules (Plaintiff's Brief p. 6-10).

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Augusto v. Commissioner of Social Security, 2008 WL 186541 *7(M.D. Fla. January 18, 2008) (citing Foote, 67 F.3d at 1558). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the "grids." Augusto, 2008 WL 186541 at *7. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Augusto, 2008 WL 186541 at *7 (citing Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed.2d 66 (1983) (holding exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Augusto, 2008 WL 186541 at *7 (citing Walter v. Bowen, 826 F.2d 996, 1002-3 (11th Cir.1987)). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. Augusto, 2008 WL 186541 at *7 (citing Foote, 67 F.3d at 1559). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which

exists in the national economy. Augusto, 2008 WL 186541 at *7. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Id. (citing Foote, 67 F.3d at 1559).

To preclude use of the grids, a limitation must significantly or severely restrict the ability to work. A minor or merely possible restriction is insufficient. Augusto, 2008 WL 186541 at *7 (citing Kimbrough v. Sec'y of Health & Human Servs., 801 F.2d 794, 796 (6th Cir.1986)).

In order for the Court to determine whether or not the ALJ was correct in exclusively using the Medical-Vocational Guidelines to determine whether or not the Plaintiff can perform work that exists in the national economy, the Court must first determine whether or not the Plaintiff suffers from any non-exertional impairments such as pain as is being suggested.

It is clear from the previous argument that after a thorough analysis of the evidence, the ALJ did not find the Plaintiff's allegations of an incapacitating pain or impairment fully credible. After having discounted the Plaintiff's argument that the Plaintiff suffered from severe pain symptoms, the ALJ discussed his finding regarding other non-exertional impairments and the weight to be given the various physicians in this case

Based upon all of the information before him in the record, the ALJ found the Plaintiff has the residual functional capacity to stand, walk, and sit six hours in an eight-hour workday. The Plaintiff can lift 20 pounds occasionally and ten pounds frequently. The ALJ also noted the Plaintiff has occasional postural limitations in climbing, balancing, stooping, kneeling and crouching. (Tr. 16). In making his finding, the ALJ considered all of the Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other

evidence. (Tr. 16).

The Plaintiff argues the ALJ did not consider the non-exertional impairments of limitations in climbing, balancing, stooping, kneeling and crouching when determining the Plaintiff's ability to perform. (Tr. 22). The ALJ found that under Social Security Ruling 83-14 and 85-15 that at the light exertional level stooping and bending are required only occasionally. Crouching is not required. Climbing, balancing and kneeling would not significantly erode the occupational base. (Tr. 22). Therefore, the ALJ found "the additional limitations have little or no effect on the occupational base of unskilled light work." (Tr. 22). Therefore, a finding of not disabled is appropriate. Additionally, the ALJ looked at the Plaintiff's younger age, limited eleventh-grade education, and the ability to perform light work. The ALJ explicitly found that Plaintiff's additional nonexertional postural limitations did not significantly erode the occupational base of light work that he could perform. (Tr. 21-22). Accordingly, the ALJ looked exclusively to the Medical-Vocational Guideline Rule 2.01.18 which directs a finding that Plaintiff was not disabled. (Tr. 22).

After a thorough review of the evidence, the Court recommends the ALJ correctly evaluated the Plaintiff's credibility and correctly applied the Eleventh Circuit Pain Standard. The ALJ took into account the objective medical evidence from treating and examining physicians and other factors such as the information from the Plaintiff, evidence of daily activities, the frequency and intensity of pain, and precipitating and aggravating factors, medication taken and resulting side effects, any other measures taken to alleviate the pain, and inconsistencies in the Plaintiff's statements. Finally, the ALJ properly concluded, based upon substantial evidence in the record, the Plaintiff could perform at a full range of work at the light exertional level, and has no nonexertional impairments that significantly limit the work skills at that level. The ALJ was, therefore, correct in relying

exclusively on the Medical-Vocation Guidelines without the necessity to call a vocational expert. Therefore, it is respectfully recommended the decision of the Commissioner should be affirmed.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this  5th  day of June, 2009.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record, MJCD